UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

CHRISTINA LEMOINE, :
:
               *Plaintiff,* :
:
    *-against-* :
:
LIV UNLTD, LLC, :
:
              *Defendant.* :

------------------------------------------------------------X

18 Civ. 8804 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

    Plaintiff, a former swim instructor for Defendant, a limited liability company that provides concierge, wellness, and fitness services, brings this action alleging Defendant violated the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). The parties seek approval of a settlement agreement. For the following reasons, the Court declines to approve the proposed settlement agreement in its present form.

## DISCUSSION

### I.    Legal Standard

    "To promote FLSA's purpose of ensuring 'a fair day's pay for a fair day's work,' a settlement in a FLSA case must be approved by a court or the Department of Labor." *Hyun v. Ippudo USA Holdings*, No. 14-CV-8706 (AJN), 2016 WL 1222347, at *1 (S.D.N.Y. Mar. 24, 2016) (quoting *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015)). Before a district court enters judgment approving of an FLSA settlement, "it must scrutinize the settlement agreement to determine that the settlement is fair and reasonable." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In doing so, "a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid

anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Id.* (internal citations and quotation marks omitted).

## II.   Analysis

### A.   Settlement Sum and Attorneys' Fees

The settlement agreement (Dkt. 6-1 (the "Agreement" or "SA")) provides for a payment from Defendant to Plaintiff and Plaintiff's counsel of $23,530.24—$15,686.83 to Plaintiff and $7,843.41 to Plaintiff's counsel. (SA ¶ 3.) The settlement amount—which the parties represent is equivalent to Plaintiff's highest year's compensation during her employment by Defendant—is reasonable, given Plaintiff's limited possible recovery should she take her claims to trial.

The attorneys' fees are one-third of the total settlement amount—an amount viewed as reasonable in this Circuit. *See, e.g.*, *Garcia v. Atlantico Bakery Corp.*, No. 13-CV-1904, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the customary contingency percentage in FLSA cases."). But Plaintiff failed to submit billing records so there is no basis for the Court to assess whether the billing rates and work performed were reasonable. *See Arango v. Scotts Co.*, LLC, No. 17-CV-7174 (KMK), 2019 WL 117466, at *5 (S.D.N.Y. Jan. 7, 2019) ("Even where attorneys' fees are sought pursuant to the percentage of the fund method, counsel must submit evidence providing a factual basis for the award.") "A proper fee request . . . includes contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Id.* (internal citation and quotation marks omitted). "It may be that counsel's fee request is entirely commensurate with the amount of time that the lawyers spent on this case. But such determinations require evidence, and plaintiff's counsel has

2

provided none." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 182 (S.D.N.Y. 2015). The Court cannot approve the attorneys' fees without reviewing billing records.

**B.    Mutual General Release**

"Judges in this District have not taken a uniform approach to mutual general releases in wage and hour cases." *Plizga v. Little Poland Rest. Inc.*, No. 15CV08820LAKBCM, 2016 WL 9307474, at *6 (S.D.N.Y. July 18, 2016). Broad releases are disfavored, but mutual limited general releases, at least in the non-class context, have been viewed as effective. *See Souza v. 65 St. Marks Bistro*, No. 15-CV-327 (JLC), 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015) ("A mutual release will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes.")

The Agreement contains mutual general releases of Plaintiff's and Defendant's potential claims. Plaintiff's general release provides, *inter alia*, that Plaintiff releases and discharges all claims against Defendant arising out of Plaintiff's employment with Defendant, including claims related to "wages, benefits, retaliation or discrimination in employment on the basis of any protected characteristic," "claims for wrongful discharge, retaliation, breach of express or implied contract, breach of an implied covenant of good faith and fair dealing, [and] violation of public policy, defamation or misrepresentation. . . ." (SA ¶ 4.) Plaintiff's release also "applies to rights and claims arising under the Age Discrimination in Employment Act of 1967." (*Id.*) Defendant's general release provides that Defendant releases Plaintiff from all claims "of any nature whatsoever, known or unknown, which Defendant now has or claims to have against Plaintiff from the beginning of time to the date of this Agreement. . . ." (*Id.* ¶ 5.)

There are limitations on the general releases. The Agreement specifies that the parties: (1) "may bring a claim for breach of this Agreement"; (2) do not waive any potential sexual

3

harassment or abuse claims by Plaintiff; and (3) do not intend to interfere with Plaintiff's right to bring a charge of discrimination with federal, state, or local government agencies, except that Plaintiff may not recover for any such charge unless it relates to sexual harassment or sexual abuse. (*Id.* ¶¶ 6.1-6.3.)

These release provisions are overly broad and not limited to the claims that were pled in this action. *See Arango*, 2019 WL 117466, at *4 ("[T]he caselaw is clear that any release provision must be limited to the claims at issue in this action."). The Agreement permits Plaintiff to bring any claims of sexual harassment or abuse, but precludes her from bringing federal age discrimination claims or recovering on any other discrimination claims that do not relate to sexual harassment or abuse. While the provisions are mutual, Plaintiff is no longer an employee, and the settlement does not apply to a class action such that there would be a "danger that an overbroad release would bind class members who had no bargaining power concerning the settlement terms," *Plizga*, 2016 WL 9307474, at *6, the Court will not approve the mutual general releases until they are limited to conduct arising out of "the identical factual predicate as the settled conduct"—wage and hour claims against Defendant. *Id.*

**C.   Non-Disparagement Clause**

Non-disparagement clauses are disfavored in FLSA settlement agreements. For a court to approve a settlement containing one, it generally "must include a carve-out for truthful statements about plaintiffs' experience in litigating their case. Otherwise, such a provision contravenes the remedial purpose of the statute and, in this context, is not fair and reasonable." *Plizga*, 2016 WL 9307474, at *5 (internal citations and quotation marks omitted).

The Agreement contains mutual non-disparagement clauses, (SA ¶¶ 10.1, 10.2), but do not carve out truthful statements that Plaintiff should be able to make about this litigation. *See*

4

*Martinez v. Gulluoglu LLC*, No. 15 CIV. 2727 (PAE), 2016 WL 206474, at *1 (S.D.N.Y. Jan. 15, 2016) ("Here, the non-disparagement provision contains no such carve-out. The Court will not approve an agreement containing this provision as written.") Such provisions, even when mutual, are contrary to public policy. *See Amaro v. Barbuto*, LLC, No. 16-CV-1581 (AJN), 2017 WL 476730, at *3 (S.D.N.Y. Feb. 2, 2017). Without a carve-out, the employer here could argue that Plaintiff would be in violation of the agreement "by informing other employees—who may not be aware of their rights under FLSA—of the company's failure to pay the wages required by law." *Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259 (RA), 2015 WL 9162701, at *3 (S.D.N.Y. Dec. 15, 2015).

The parties claim that they have crafted Paragraph 5 of the Agreement to allow Plaintiff to comment on truthful statements about her experience litigating, but Paragraph 5 relates to Defendant's General Release against Plaintiff, not the non-disparagement provisions, which are found at Paragraphs 10.1 and 10.2. Paragraph 10.1 could be read to prevent Plaintiff from speaking truthfully about her experience litigating this case. The parties must more explicitly carve-out the required exception.

**D.  Confidentiality Provision**

The agreement contains a broad provision in which both parties agree to keep the agreement confidential. (SA ¶ 12.) Such provisions are disfavored by courts in the Second Circuit. *See, e.g.*, *Olano v. Designs by RJR, Ltd.*, No. 17CV5703, 2017 WL 4460771, at *3 (S.D.N.Y. Oct. 6, 2017). The fact that the settlement was filed publicly on the docket does not save a broad confidentiality provision. *See Arango*, 2019 WL 117466, at *3 ("While the Proposed Settlement permits public filing of the settlement, courts in this District have repeatedly held that, even when a settlement is publicly filed, a provision that prohibits

Plaintiff's right to discuss the settlement is incompatible with the purposes of the FLSA, namely, to ensure that workers are aware of their rights."); *Martinez*, 2016 WL 206474, at *1 (confidentiality provision is "contrary to well-established public policy," even where settlement agreement was filed on public docket); *Guareno v. Vincent Perito, Inc.*, No. 14CV1635, 2014 WL 4953746, at *1 (S.D.N.Y. Sept. 26, 2014) (same).

The broad confidentiality provision here forbids Plaintiff from disclosing the existence of the agreement or any of its terms, "with the exception of Plaintiff's attorney, accountant, tax preparer, children or spouse or as compelled by legal process, provided [they] are informed of this provision requiring confidentiality and such person agrees to be bound by its terms." (Dkt. 6-1 ¶ 12.) Courts in this District have declined to approve similar provisions. *See, e.g.*, *Martinez v. SJG Foods LLC*, No. 16-CV-7890 (RA), 2017 WL 2169234, at *2 (S.D.N.Y. May 16, 2017). The confidentiality provision is contrary to public policy and the Court will not approve it.

## CONCLUSION

For the reasons stated, the attorneys' fees, general release, non-disparagement, and confidentiality provisions of the Agreement are objectionable. The request to approve the proposed Agreement is denied without prejudice to the filing of a revised settlement agreement correcting the deficiencies identified in this Order.

Dated: New York, New York
      April 24, 2019

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge